THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ VÉLEZ TORRES, Defendant and Appellant.

No. CR-69-18.          Decided October 21, 1969.

Carlos Roberto Vélez for appellant. J. F. Rodríguez Rivera, Acting Solicitor General, and Lydia Nieves Franqui, Assistant Solicitor General, for The People.

PER CURIAM: José Vélez Torres, having been convicted of selling heroin, assigns on appeal the commission of several errors by the trial court by virtue of which he requests the

reversal of the judgment which sentenced him to imprisonment from five to ten years. We do not agree with appellant.

■ 1.—Appellant alleges that the trial court erred in refusing to order the prosecuting attorney to bring William García, informer, to the trial. The record shows, contrary to what the defense alleges, that the latter did not request the court to summon the informer, despite the fact that the prosecuting attorney offered to give any information in order to find him. Moreover, as in *People* v. *López Rivera*, 91 P.R.R. 672 (1965), when the transaction took place agent López Torres was present, he testified as witness for the prosecution and was extensively cross-examined. So that, summoning the informer was not essential for the defense of defendant. *Cf. People* v. *Flores Berty*, 92 P.R.R. 562 (1965).

2.—Appellant contends that his request for a new trial should have been granted based upon (1) the court's refusal to allow the informer to be brought to the witness stand, (2) some erroneous instructions and (3) the publicity of a proceeding in the United States District Court for Puerto Rico where the undercover agent, who was a witness for the prosecution, was object of an attempt on his life.

■ In the preceding paragraph we disposed of the question concerning the informer. Appellant has not mentioned which instructions he considers erroneous. From the record it appears that after the trial court gave the instructions, the defense objected to them because the court specifically stated to the jury the fact that appellant went with López and García to Bolivar Street for the purpose of performing a drug transaction and the court told them that if they believed beyond any doubt that appellant took agent López to Estrada Molinari's house to facilitate the sale of heroin, that evidence justified a verdict of guilty, since pursuant to § 36 of the Penal Code anyone who aids or abets in the commission of a crime is a principal or perpetrator of the crime. He, also,

alleged that the evidence for the prosecution was not corroborated as required by the *Zaragoza* and *Ayala* cases. In our opinion these assignments lack merit.

From the record it does not appear that appellant raised the question of the alleged publicity during the proceeding, nor does it appear how said publicity influenced the jury to the point of constituting a denial of fair and impartial trial warranting the granting of a new trial.

■ 3.—Appellant alleges that the verdict is null because the number of jurors who voted in favor of appellant's guilt was not written in letters and because they did not specify the legal section or provision under which he was found guilty, the jury limited itself to finding appellant "guilty of a violation of the Narcotics Act."

Rule 146 of the Rules of Criminal Procedure provides the form of rendering the verdict. It is not necessary to express the legal provisions for the violation of which defendant is found guilty. Neither does the law require a special method to state the number of members who concurred in the verdict. In this case, said number was expressed by underlining the number nine which appeared in the printed form. The court *motu proprio*, in open court, requested the foreman of the jury to write down the number nine. The parties did not object to this procedure to correct what we consider to be a mere error of form. This assignment lacks merit.

Rule 149 of the Rules of Criminal Procedure provides that if the court should be unable to determine the intention of the jury to acquit or convict or of what count or counts the jury wished to acquit or convict, the court may order the reconsideration of said verdict. But if the jury persists in returning an informal verdict, such verdict shall be accepted and the court must give judgment of acquittal.

In the case at bar, in the instructions to the jury the offense charged against defendant was specified. The jury also received a copy of the information. Therefore, the inten-

tion of the jury to find defendant guilty of a violation of § 29 of the Narcotics Act was clear and unequivocal.

4–5.—Appellant assigns that the evidence was insufficient to support his guilt beyond reasonable doubt.

There was no disagreement between the date the events took place and the facts established by the evidence.

██ ██ The omission to allege the date, as appellant accepts, is not fatal, unless such allegation were essential to charge an offense. In this case, the information had been amended prior to the trial, and, in addition, the defendant had been informed, on a bill of particulars, among other things, the date on which the events took place. So that the omission of the date when the events took place in the original information did not prejudice defendant at all.

The evidence was sufficient to support the conviction. The Solicitor General summarizes it correctly as follows:

"Roberto López Torres, the first witness of the prosecuting attorney, testified in synthesis, the following: By September 20, 1966 he intervened with defendant in the fulfillment of his function as internal-revenue undercover agent, work he had been performing for almost four years, specifically with respect to the unlawful traffic of drugs. He met defendant, José Vélez Torres, as 'Junior Luquita' through the special employee William García, known as 'Palou', who was commissioned to put the witness in contact with individuals involved in the illegal traffic of drugs.

"Defendant promised to take him to an individual known as Tinito so that the latter would supply him half an ounce of heroin. On September 20, 1966 they looked for said individual in the Bar Manhattan at stop 20 in Santurce. Upon not finding him there, defendant offered to make the deal with another 'pal'. They went, in defendant's automobile, together with the special employee, to Bolivar Street at stop 24. There defendant introduced him to Serafín Estrada Molinari to whom defendant said that he, the witness, wanted 'the stuff'. The special employee spoke with Estrada Molinari and then invited the agent to go out to the street where he asked him for $70.00 for the transaction. They went into the house and there the special em-

ployee gave the $70.00 to Estrada and the latter delivered a small package containing twenty-five small envelopes to the special employee, who immediately handed it to the agent. That same night the agent delivered the small envelopes to his supervisor, Luis Montañez Robles, said envelopes were then subject to the corresponding analysis and were found to be heroin. These small envelopes were introduced in evidence, after being identified by the witness.

"During the detailed cross-examination to which the defense submitted the witness, he testified among other things, the following: That he had worked before as undercover agent, in the area concerned with the investigation of alcoholic beverages and as such he had been a witness in the courts of Guayama, Humacao, Caguas, and Bayamón. Upon arriving at the Special Investigations Bureau of the Department of the Treasury, his supervisor Luis Montañez Robles trained him in various specific aspects of the drug traffic and introduced him to special employee William García in a room on Tapia Street in Santurce. He described García as 'a white person, of about 5 feet 6 inches tall, semibald, wearing glasses, about 35 or 36 years old. Something peculiar about him was that almost always he saw him wearing those twisted leather sandals with straps and he wore glasses.'

"He said that before September 20 he had reported six or seven cases in the area of Puerta de Tierra where he had been introduced by the special employee. He met the latter sometimes in 'El Marché Bar' or in the 'Mon Bigote' bar, on Norzagaray Street. He met defendant in the first bar, about two weeks before the transaction which was carried out in a place named Hotel Silva. In that place he did not take the details since other persons of the division were in charge of those particulars.

"Upon being questioned again by the prosecuting attorney the witness testified that the special employee had been found and he had appeared in court to testify as witness in a previous case, although he could not assert whether he had appeared as witness for the prosecution or as witness for the defense.

"The parties stipulated on the testimony of chemist Ramón Chinea.

"Luis Montañez Robles, testified that he had been working for about eleven years as special agent of the Special Investiga-

tions Bureau of the Department of the Treasury. He said that on September 20, 1966 at about 1:00 p.m. in a room on Tapia Street, corner of 50 Moncita Street, he had given instructions to agent López Torres to work on the case which culminated with the arrest of defendant. That night, at about 7:00 p.m., the agent delivered to him in his residence twenty-five decks or small envelopes of heroin, on which the witness wrote his initials and the date, placing said decks in a sealed envelope with the information agent López had given him and his signature. On the following day he delivered said envelope and its contents, to chemist Ramón Chinea, for the corresponding analysis. The witness identified the aforesaid decks.

"To questions of the defense he said he had known William García, the special employee, for approximately ten years. Said employee received remuneration for his services. He [Montañez Robles] had been acquainted with defendant, with whom he had some friendship, before he met García. He did not find out that defendant was involved in illegal transactions until a few days before the transaction in which agent López took part, following his orders, was carried out.

"The defense presented Cecilio Gómez as reputation witness. He testified that he was in charge of a lottery agency and that he was a juror in the trial court. He had known defendant, who was his neighbor on Sol Street in San Juan, for about twenty-five or twenty-six years. Neither he nor the community knew defendant as a drug dealer, he was best known as an honest and industrious man."

■ Though the agent incurred some contradictions, which he explained, none of them refers to essential elements of the offense. There is no justification at all to disturb the weighing of the evidence which the judge had before him. *People* v. *Luciano*, 83 P.R.R. 551 (1961) ; *People* v. *Avelino Cosme García*, CR-68-15, judgment of October 21, 1968.

6.—Appellant invokes the defense of entrapment.

■ Appellant denied all participation in the facts, and on the contrary, he maintained that the prosecuting attorney had failed to connect him with said facts, except that he was present and witnessed the commission of the offense. Evi-

dently, under these circumstances, the entrapment defense does not lie. *People* v. *Pérez*, 72 P.R.R. 809 (1951); *People* v. *Verdejo Meléndez*, 88 P.R.R. 202 (1963); *People* v. *Fernando Chico Peña*, CR-68-64, judgment of May 8, 1969.

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on November 6, 1967 will be affirmed.

Mr. Chief Justice, Mr. Justice Hernández Matos, and Mr. Justice Blanco Lugo did not participate herein. Mr. Justice Santana Becerra and Mr. Justice Dávila concur in the result.